We're going to move now to the final argument of the day. This is Appeal Numbers 24-2869, 24-3103, 25-1185, and 25-1223, Giovannelli v. Walmart Inc. Mr. Tobin, we'll begin with the oral argument from you. Thank you. May it please the Court, I'm Craig Tobin on behalf of Nicholas Giovannelli, and I am here to tell this Court, or suggest to this Court, that it is very easy in this case to predict what the Illinois Supreme Court would do. It would follow the mandate it has repeatedly handed down to not allow a mechanical application of the statute of limitations to work a grave injustice as it did here. It eliminated a claim before an individual knew that they had a claim, before they had been damaged by that claim, and what the Court has repeatedly said is that under those circumstances, the Court should adopt a discovery rule, not the one suggested in Blair, but the discovery rule the Illinois Supreme Court has repeatedly established, which is when an individual knew or reasonably should have known that they have been injured and been injured by wrongful conduct of another. The standard which the defendants urged this Court to accept, the standard articulated in Blair, was specifically rejected by the Illinois Supreme Court in Nolan v. Johnson, Manville Asbestos case. In that case, they specifically stated that they would apply the discovery rule, which they have done systematically since 1968, I believe, because in that way, an injured person is not held to a standard of knowing the inherently unknowable, that that is exactly what Blair says the standard should be, that it should be a standard of hidden, inherently unknowable, inherently undiscoverable, a standard the Supreme Court has rejected. But I would suggest to this Court that even under the Blair standard, which has not been accepted by the Supreme Court, we have raised the question of fact. The question of fact as to whether or not this was hidden. Now, we know that the language being used in Blair cannot be exact, because to be hidden means it's never found. To be inherently undiscoverable means it can't be discovered. To be inherently unfindable, it can't be found. Now in this case, Judge, and we are not like Blair, and Blair, the Court specifically held that this was not hidden, it was readily accessible to the public, and more importantly, the individual in Blair posed for the photograph that got posted. He went past it for 10 years, and there was no objection to it. So the discovery rule being discussed in that case, quite frankly, wasn't appropriate. But take a look in this case. It is hidden. You can, and what's before this Court is his former mate in the military conducted three name searches, and Mr. Ginevalli's photograph never appeared except on the Department of Defense website. That's the only place it took him. It was only after multiple searches, and he searches for his platoon name, that this photograph shows up. That has to be hidden. And the cases that the District Court relied on were not even similar in the fact pattern. In those cases, you could find that individual by a simple name search. You can't do that here. So here would be the burden on anyone who wants to see, without knowing that their image had been misappropriated. They would have to conduct a search under every entity, every church, every Cub Scout, every entity they had ever been associated with in their entire life. How could that burden be imposed on the individual as opposed to the wrongdoer? And as the Supreme Court has said, the statute of limitations is not designed to shield the wrongdoer, yet that's what it would do here. There's no claim that there's some prejudice in evidence here. As a matter of fact, they were selling the photograph, and it's in the record, up until the filing of the lawsuit. So there's no damage to them. It's not like they can't find the documents or they can't have the bill of sale. According to the defendant, there's only one sale, and it takes place after this is discovered by Mr. Ginovelli. But think about Mr. Ginovelli. This is a war hero that returns home and finds, as he testified to, that his image had been misappropriated. And the term he used is he felt raped. And I understand that that may seem very harsh. But you have a decorated war hero who suffered traumatic brain injury and came home with post-traumatic stress disorder, and he is witnessing a photograph he never consented to these individuals to sell. The Department of Defense has a right to take his photograph. They have a right to post it. But they specifically warn people that the individual soldier has not given up his privacy rights, that that's exactly what happened here. Without consent, without a license, without his knowledge, they misappropriated his photograph and then posted it. And they posted it for sale. And that's something else the court has to take into consideration here. We are to reward someone who does this for commercial gain. And yet the right of the plaintiff and the appellant here is never allowed to go forward because before he ever discovers it, under Blair, his claim supposedly has been exhausted. But this court could send this back for two reasons. It is no doubt what the Illinois Supreme Court would do here. They would apply their standard, a standard they have articulated. And when they had an opportunity to adopt Blair in the case Sioni, if I'm misspelling it or misstating it, versus Simon, they did not. Sionini. Sionini. Thank you. They did not adopt that standard. They specifically reserved their right to look at whether, in general, under defamation, the discovery rule would apply. They had a, I want to, on that particular case that you're talking about, they spent some time talking about Blair. And if, if Blair's reasoning was far afield from where the Illinois Supreme Court would have been, you would have thought they had a great opportunity in 2021 to just set Blair aside. Well, actually, they didn't adopt Blair, Judge. I would disagree. They do talk about Blair. No, they, they discussed it. They discuss it. They distinguish it from what they have on their hands. They do, which they would do in this matter as well. But if Blair struck them as at complete odds with Illinois law, that's quite a nice opportunity to set Blair aside. Well, Blair wasn't directly before them because they made the decision that Blair wouldn't apply in this circumstance because they weren't applying the single publication rule. But in, after they said that, they said, we will not address that at this time. They don't say they won't address it. They reserve the right to address it. And I would take the opposite approach, Your Honor, that what you're taking is that that's an indication, and that is the trend of the Supreme Court, to apply the new or should have known standard. That would have been the opportunity to say, no, Blair controls here. And yet every time they were confronted with that situation, they imposed the standard that they created. So you can reserve the remainder of your time. I do. Thank you. Very good. Thank you, Mr. Tobin. Mr. Borchia, we'll move to you now for argument on behalf of the appellee. Thank you, Your Honor. May it please the Court. My name is Jim Borchia. I represent the defendants in this case. What the plaintiff is asking for in this case is unprecedented. He's asking the court to adopt a discovery rule, provide publicity claims, that no court has ever adopted. This court is sitting in diversity jurisdiction, has to apply Illinois law. There is no Illinois law supporting counsel's position. Not only Illinois law, but anywhere outside of Illinois. No court has adopted a discovery rule for these kind of claims. The fact the discovery rule has been adopted in other claims, which counsel points out, such as Nolan in the asbestos case, is not these facts. The courts in these cases draw a line and say when the defamatory material or here, the right of the image is published, it is the clock starts then. Whether the plaintiff knows about it, should have known about it, the clock starts then. And here, the clock started in 2011 when this image was first published, whether plaintiff knew about it or not. The Blair case is critical here because Blair is the only Illinois appellate court decision that is on point. And Blair rejects the discovery rule for these cases and says it does not apply and we're going to apply the single publication rule. Here we have a mass media rule also coming into play. These images are all on public websites, Walmart, Amazon, Pixels, available to the world to see at any point in time. And counsel says it was hidden. How were they hidden? The image was on the website, publicly available. He says, well, he couldn't find it with a name search. Well, both plaintiff's friend, Macias, and the plaintiff found them searching for them. Now, he said he had to put in his troop name. Okay. He could have also put in his image. The internet allows image searching as well. You can put your image up on the internet and search on Google, been available for 30 more years where you can search an image also and not just your name, but an image. So this was not in any way hidden. And the case law talks about if you're up on a website, this is not a hidden, this is a mass media situation where you have an immediate start of limitations period. Different than the Tom Olesker case where it was a credit report that was behind a paywall. That's different. Here, anyone in the world, including the plaintiff, could have seen it. Mr. Tobin cites no case law in his briefs or today that adopts this rule. One thing he said I want to talk about a little bit is he said this is before his client was damaged. That's not true. In vital publicity cases, you are damaged when your image is used. In this case, his image was used in 2011 and 1618 in the different defendants. That's damage. The statute allows statutory damages. It also allows you to get, and counsel pled this in his complaint, revenues that are gained from the use. Further to that point, is there anything in the record about how often this particular photograph might have been purchased off of Walmart or Amazon or Pixel? There is. And actually there were two purchases and they were by plaintiff's friend after he discovered what happened here. This did not sell to anybody else. So his claim in this case, but he pled in his complaint, he wants damages for the profits or revenues generated to the defendants from the uses. That happened long before he knew about it. The fact that he may have other damages, he claims he has emotional distress. And I'm not trying to discount his service to the country, but the fact is that does not start the clock. The clock's already started. You can't just wait until you get some portion of your damages. Whenever you're, the statute here and the actual case law says you are damaged upon publication, whether you know about it or not. The issue here is, and this court is in the Schwiez case, it was a court, it was a pre-Blair case. It was a case where a gentleman was in prison. There's a novel written about him when he was in prison. He didn't know about it. He got out of prison, found out about it, and filed a suit two months later. Well, this court said in that situation, you're still barred. The fact that you don't know about it, the single publication rule and the mass media rule bars your claim. This is nothing new. And what counsel is asking this court to do is act as the only Supreme Court and suggest that the only Supreme Court would adopt this rule. As Judge Scudero said, they could have done this in the Cialini case. They discussed Blair extensively in that case. And no court has criticized Blair or distinguished Blair in Illinois or this court. Blair is the law in Illinois. And for counsel to suggest that the only Supreme Court would simply adopt the discovery rule, what's the basis for that? The only Supreme Court has rejected the discovery rule in many different situations, including in defamation cases, which this case is analogized closely to. In defamation cases, the discovery rule is rejected. And the single publication rule applies. And the plaintiff has to prove that the image was hidden or undiscoverable. Here, the undisputed facts are neither of those apply here. Counsel also suggests that we should let the jury decide here whether the image was hidden. No court has ever said that. If you look at the decisions in this area, these are summary judgment or dismissal cases. This doesn't go to the jury because no reasonable jury could find, based on an image on a public website, that that is somehow hidden or undiscoverable. It's not. It's easily discoverable. And therefore, the clock starts running under these mass media cases upon publication. And here, the plaintiff obviously filed his claim long after. And one of the defendants here, Pixels, published it in 2011. That's almost 10 years after or before the plaintiff filed a lawsuit. So if you take plaintiff's theory and project it forward, pick different facts here. If Mr. Giovinelli or his friend didn't find this until 30 years from now, under his theory, he could still file a lawsuit. And the courts say, no, we're not going to allow that. You have to have some repose period that's reasonable. And the repose period here is one year. And it is if you put an image out or you use somebody's image or you defame somebody and you put it in the public, you have a repose period after a year. And after a year, you can't be sued for that. And here, what the plaintiff has done is, he's trying to suggest that he could not have discovered this, but there's no evidence to support that. The evidence is clear that this image was discoverable by anybody in the world, including the plaintiff. One of the cases... And counsel talks about there's an injustice here. Well, there's no injustice here. The fact is that the justice and the courts have to... There has to be a line drawn. And the line that is drawn is, when you put a mass media publication out there, the line is drawn at a year. The plaintiff had a year. And the fact that he didn't discover it doesn't give him an opportunity to somehow toll the limitations period or say it doesn't run from that point forward. There's... One of the cases I want to talk about is the Tom Olesker case, which was the credit reporting agency case. That was different because, again, the Internet publication was behind a paywall. So when you have a situation like here, where you have public websites that are open to the public and anybody can see them, the clock starts running. This was findable, not hidden. In fact, no more hidden than the plaintiff's image on the Department of Defense website. If you go there today, in the Department of Defense website, you can find his image up there. You can download it, you can use it. This is not a plaintiff's photograph. This is a Department of Defense photograph that they own. I want to make two other quick points before I stop. The plaintiff's claim against one of the defendant's doctrinic images was his time... Even if the discovery rule applies, because that company was not sued until almost two years after he discovered it. And relation back does not apply because he sued the wrong company. He sued StockTrack Corporation at first, not images. The final point I want to raise is we did bring a motion for sanctions because the plaintiff sued StockTrack Corporation, a company that had nothing to do with this image at all. The plaintiff, in his summary judgment, said he does not contest summary judgment with StockTrack Corporation, but in his appeal, he appealed that ruling, and in his brief, he did not... ...state he was not pursuing StockTrack Corporation. In fact, he states in his brief on page 5 that all the defendants he's pursuing were named in the case originally. StockTrack Corporation was named, not images. He's trying to say... So that's a side point. But the overall, I guess, in summary, this court is not your role to create law here. You have to follow Illinois law. The Illinois law, the only decision on point, rejects the arguments the plaintiff is making here. You should follow that law here and not... Especially when you have the fact that no other court outside of Illinois has adopted this argument. Thank you, Mr. Borsha. Mr. Tobin, we'll move back to you now for rebuttal argument. Thank you very much. First, let me address that this is not my theory. This is the Illinois Supreme Court's theory on when the clock should start. They're the ones that created the reasonable discovery rule. It wasn't us. Contrary to what the defense just told you, you actually can assess Illinois law, and you said so in Williams, McCarthy, Kinley, and Rudy and Pica versus Northwestern National Insurance Group, where the court specifically stated that if that case is not a good predictor of how the statute would be interpreted, it can, on its own, then evaluate what the Illinois Supreme Court would do. The fact is that as we stand here today, the Illinois Supreme Court has never adopted the standard that's being advocated here, rejected that standard, and, um... Let me say this, Judge, Your Honors. This is not a mass media case. This is not a defamation case. The same protections that we try to do for free speech do not exist here. This is the commercialization of an individual's photograph, and contrary to what counsel said, if you go to the Department of Defense's website, it warns you not to take those photographs, that those privacy rights have not been waived. Just to address, our brief touches upon the Rule 15 issue and the Relation Back Doctrine, and we believe the Supreme Court has addressed that, and that this is an appropriate defendant. We did not address any arguments against Stocktrek Corporation in our brief. It was against Stocktrek Images, and pursuant to Rule 15, they should remain in this case. Thank you. Thank you, Mr. Tobin. Thank you, Mr. Borsha. The case will be taken under advisement. That will complete our oral arguments for the morning.